against Baker. The action sought to be used in bar of these proceedings, as we have seen, abated by the death of the plaintiff. It has not been since revived, and from the facts appearing upon the hearing of the motion it is altogether probable that nothing will ever be done looking to its revival. The order appealed from was properly granted, and it should be affirmed, with $10 costs and disbursements of the appeal. All concur.

---

### CLIFFORD v. GATES et al.

#### (Supreme Court, General Term, Fifth Department. June 23, 1893.)

MORTGAGE—WHAT CONSTITUTES—DEED ABSOLUTE IN FORM.

On an issue as to whether a deed absolute in form of an undivided interest in land was a mortgage, the grantor's husband testified that it was clearly understood that it was to secure a five-years loan, and that the grantee gave a written defeasance, which witness had lost. A son of plaintiff, who was 12 years old at the time of the transaction, gave like testimony. No arrangement was made for the payment of interest, and the grantor never paid nor offered to pay, and the grantee never demanded, any interest. The land was then under a lease having 17 years to run, and about that time the grantor sold a like interest for the amount of the alleged loan, which the evidence showed was the value at that time of the interest conveyed. The first claim that the transaction was a loan was made 17 years later, after all but one of the persons having knowledge of the transaction, outside of the grantor's family, had died; and such survivor, a disinterested witness, testified that it was a sale. *Held,* that the conveyance was absolute.

Appeal from special term, Erie county.

Action by Olivia M. Clifford against Sarah A. Gates and others to have a deed absolute in form declared a mortgage. From a judgment dismissing the complaint on the merits, plaintiff appeals. Affirmed.

The opinion of Mr. Justice CHILDS at special term is as follows:

On the 1st day of October, 1875, the plaintiff, Olivia M. Clifford, was seised in fee of the undivided one-half part of the parcel of land situated in the city of Buffalo, known as "Ellicott Square," the whole of said "Ellicott Square," so called, being in the possession of others under a lease which expired in August, 1892, and produced no income save a ground rent of $1,000 per annum, which was divided among the several owners of said parcel of land. On said 1st day of October, 1875, said plaintiff made, executed, and delivered to George B. Gates a full covenant warranty deed, in which her husband, John C. Clifford, joined, by which said plaintiff conveyed to said George B. Gates the undivided one-fourth part of said Ellicott square, for the consideration, expressed in said deed, of $30,000. Upon the execution and delivery of said deed George B. Gates paid to said Olivia M. Clifford the full sum of $30,000, and upon the same day procured said deed to be recorded in the clerk's office of Erie county. Subsequently, and on the 27th day of June, 1880, said George B. Gates departed this life, leaving the defendant Sarah A. Gates, his widow, and the other defendants, his children, him surviving; also leaving a last will and testament, which has been duly admitted to probate by and before the surrogate of the county of Erie, and of which said defendants are the executrices. The plaintiff has brought this action for the purpose of procuring an adjudication to the effect that the deed of conveyance so made, executed, and delivered by her to said George B. Gates, was so executed and delivered for the purpose of securing a loan of $30,000,

and not as an absolute conveyance of the title of the premises therein described to said Gates. The claim of the plaintiff is that just prior to October 1, 1875, she applied to said George B. Gates for the loan of the sum of $30,000, the payment of which she proposed to secure by a mortgage upon the undivided one-fourth part of said Ellicott square; that during the negotiations for said loan Gates informed her that he was willing to make the same, but should require a deed of the premises as security therefor, instead of a mortgage, and that the plaintiff could have five years within which to repay the sum so loaned, and redeem the premises so conveyed; that, in pursuance of such requirement, and solely for the purpose of securing such loan, she executed and delivered the conveyance referred to.

In support of this claim John C. Clifford, the husband of the plaintiff, has testified that he was present with the plaintiff at all times during the negotiations between her and said Gates for said loan. That Gates assented to the plaintiff's request for the loan, at the same time stating that instead of a mortgage he should require a conveyance of the premises offered as security therefor, stating in the same connection that the plaintiff should have five years within which to repay said loan and redeem the premises conveyed; and that it was finally agreed between said parties that the transaction should be consummated in that form, and that subsequently the parties met in the office of Mr. Bowen for the purpose of completing the same. That upon that occasion a deed, which had been before that prepared, was produced to be executed by the plaintiff. That the plaintiff objected to executing such deed, as the arrangement between herself and Gates for the redemption of the property conveyed was not, in writing, provided for. That, after some conversation between Gates and the plaintiff, in which Gates stated that the understanding between himself and the plaintiff would be observed by him, the plaintiff executed and delivered the deed and received Gates' check for the sum of money named therein as a consideration. That afterwards, and on the same day, Gates, the plaintiff, and the witness, together with their son, went to the Bank of Buffalo, for the purpose of procuring the money upon said check. That after reaching the bank the question of redemption was again raised by the plaintiff, and that she stated, in substance, that she desired some written evidence of her right to redeem. That after some conversation between her and Gates, Gates retired to another room, and upon returning presented to the plaintiff a paper writing, the contents of which are stated by the witness to have been, in substance, as follows: "Mrs. Olivia M. Clifford: You may redeem your interest in the Ellicott square, deeded to me, on payment of $30,000 and interest, within five years from date." It was dated, and signed "George B. Gates." This witness further testifies that this paper was delivered to him by the plaintiff, and that he placed the same, with other papers, in a safe in his residence in the city of New York. That subsequently, and about the year 1880, he saw said paper for the first and last time since the same was delivered to him by the plaintiff. That since about the time of the commencement of this action he has made diligent search for the purpose of finding said paper, but has been unable to do so, the same being lost.

William O. B. Clifford, a son of the plaintiff, was called, and testified that he was present with his father and mother at the office of Mr. Bowen at the time of the execution and delivery of the deed in question, and was also present at the Bank of Buffalo, upon the occasion referred to, when plaintiff obtained the money on the Gates check, and his testimony tends to corroborate the statement made by his father. He also states that in about 1880 he saw the paper given to the plaintiff by Gates in the Bank of Buffalo, in the possession of his father, in the city of New York. The testimony of this witness is much weakened by the conceded fact that at the time of the transaction testified to by him he was of the age of but 12 years. It does not appear that this child was taken into the confidence of his father and mother, and consulted with reference to the transfer of this property, either as security or otherwise, or that his attention was specially directed to any part of the transaction between the interested parties; and it is quite inconceivable that a child of that age should observe with such care as to be able to

state, after this lapse of time, a transaction of this character, preserving all, the technical distinctions which would convert a deed absolute on its face into a mortgage security. It is more in consonance with our observation and experience to believe that this child would be more likely to occupy his time in observing and considering such matters as would naturally engage the attention of one of his age, and we are not impressed with the idea that the statement made by him as a witness, for the reason stated, materially strengthens that made by his father.

There are no circumstances appearing in this case which tend to corroborate the plaintiff's claim, and, if sustained, it must be wholly upon the testimony of the two witnesses named; while, upon the other hand, there are many circumstances which may properly be resorted to for the purpose of determining the question in issue. And, first, it appears that no arrangement was made by which Gates was to receive interest upon the $30,000 paid by him to the plaintiff annually, semiannually, or at any stated time. Second. The owner in fee of the premises in question could receive no return by way of income therefrom for a period of 17 years following the date of the conveyance in question. Third. In the year 1875 the plaintiff, through her said husband, offered to sell an undivided one-fourth of said Ellicott square for the sum of $35,000, which offer said Bork declined to accept. Fourth. An undivided one-fourth of said Ellicott square was sold and conveyed by this plaintiff to Judge Smith, in 1876, for a consideration of $30,000. Fifth. The plaintiff has never paid or offered to pay, neither has Gates, or any person in his behalf, requested or required her to pay, any interest upon said sum of $30,000. Sixth. The plaintiff first made the claim now urged by her at the time of the commencement of this action, in 1892. Prior to that time she had not requested the successors to the title of George B. Gates to recognize her rights as a mortgagor of said property, or in any manner acquainted them with the fact that she claimed to sustain that relation to the property in question.

The fact that Gates would be legally entitled to interest upon the sum advanced, if a loan, does not affect the extraordinary character of a transaction such as the plaintiff claims this to have been. It was understood by the parties that the income from the rental of premises would remain the same for the 17 years following the conveyance, and was but a small fraction of the lawful interest upon the sum advanced. In view of this fact, we should scarcely expect a person possessing business capacity and sagacity equal to the accumulation of that amount to loan $30,000 upon a contract containing no definite provision for the payment of interest, especially so, if he with his own hand prepared a paper which amounted to a defeasance, and defined the right of plaintiff to redeem. Considering that, at about the same date of this transaction, the plaintiff offered to sell and convey the same interest in Ellicott square as was conveyed to Gates for the sum of $35,000, and that she did sell and convey a like interest in 1876 for $30,000, the conviction grows upon one that the omission of Gates to provide for the regular payment of interest upon the $30,000 paid by him to plaintiff was not an oversight, or due to lax business methods, but was rather an omission, expressive of the true character of the transaction; and this view is rendered quite certain when the conveyance is found to be absolute in its terms, and to contain, not only covenants of warranty, but of seisin, free and clear of incumbrance; and the further facts are considered that no claim was made by Gates, during his lifetime, for the payment of interest, and that none has been made by the defendant since his decease, and that until the commencement of this action, in 1892, no claim was made by the plaintiff, or any person in her behalf, inconsistent with the plain terms of her conveyance to Gates. In addition to these circumstances or facts, the existence of which does not depend upon the opinion, recollection, or nonrecollection of any witness, it is required that the testimony of the witnesses who have spoken upon the question of the value, in 1875, of the premises in question, should be examined, for the apparent reason that if of no greater value than the sum advanced by Gates, that fact would go far to indicate a purchase by him, rather than a loan to

the amount of the full value of the premises pledged as security. Upon this question the witnesses Smith and Gorham agree that the fair market value of the premises in October, 1875, was $30,000. Judge Smith was at that time the owner of a portion of Ellicott square, and had had his attention sharply called to the question of value; and in 1876 he became the owner, by purchase from plaintiff, of an additional one-fourth interest therein. Mr. Gorham's attention had in a professional capacity been particularly called to the same question. The witness Bork places the value at $60,000, but his testimony is much weakened by his additional statement that at the very time referred to the interest spoken of was offered to him by the plaintiff, through her husband, for $35,000, and that he declined to become a purchaser at that price. Giving to his testimony the weight to which it seems fairly entitled, it seems to establish the fact that Gates advanced to the plaintiff a sum equal to the fair market value of the property conveyed, and by that much to support the claim of the defendants as to the intended absolute conveyance of the property.

But a single other piece of testimony, bearing upon the transaction in question, remains to be considered. Mr. Gates, Mr. Bowen, Mr. Tanner, Mr. Stevens, all of the persons, aside from Mr. Locke and the plaintiff and her husband and son, who had any knowledge of the transaction, have long since died. The survivors, save the plaintiff, who is not permitted to testify to the transaction, have been called as witnesses, and have given their version of the matter as they now claim to remember it. It is unnecessary to further refer to the statements of Mr. Clifford and his son, save in connection with that of Mr. Locke. The statement of Mr. Clifford is to the effect that upon arriving at the office of Mr. Bowen the deed to Gates was produced for execution; that Mrs. Clifford, after examining the same, declined to execute it, for the reason that the agreement for redemption was not embodied in it; that Mr. Bowen interfered, and objected to such an arrangement; that Gates and Mrs. Clifford withdrew to another part of the room, and, after a whispered conversation Mrs. Clifford executed the deed; that the real agreement between the parties was concealed from Mr. Bowen, and the paper executed with the understanding on his part that the transaction was what the paper on its face imported. The statement of Mr. Locke, referring to the same transaction, is to the effect that he was present when plaintiff came to the office to execute the deed; that she said nothing in reference to any right to redeem; that she had no consultation, whispered or otherwise, with Gates, but did object to executing the deed because of some injunction laid upon her by her father, from whom she obtained the property, in regard to disposing of the same; and finally, overcome by her feelings, she left the office without executing the deed. Mr. Locke further states that, while unable to recollect all that took place upon the occasion referred to, he does recollect that nothing was said in his presence in reference to a redemption by the plaintiff of the land conveyed, or to the effect that the deed then executed was other than an absolute conveyance of the land described to Gates as the purchaser thereof. It will be observed that these statements differ so materially as to the occurrence related that they cannot well be harmonized. One supports the plaintiff's contention, and the other as conclusively disputes it. Upon one side the testimony is from witnesses who must be, naturally, deeply interested in the success of the plaintiff, and upon the other from a witness having no interest growing out of relationship to the parties or otherwise in this controversy. Upon one side the testimony is given with circumstantial details, which, after the lapse of 17 years, is somewhat unusual; upon the other with that care which recognizes the infirmity of human recollection, and by that much fails to cover the whole transaction in detail. In this situation, and after patient and careful examination, the conclusion seems to be required that upon the main question the testimony of the defendants ought to prevail when considered only in connection with the conveyance under which they hold, but that, when considered with the other facts and circumstances in the case, to which allusion has been made, the last doubt disappears, and the conclusion is irresistibly forced that the transaction be-

tween the defendants' ancestor and the plaintiff was an unconditional sale of the property described in the deed, and that they have succeeded to the title in fee of the same.

It has been suggested that the transaction, as testified to by Clifford, amounted to a conditional sale, and not to a mortgaging of the plaintiff's property, to secure a loan. In the view taken of the testimony in the case, it becomes unnecessary to examine this question. The case presents but a single question of fact, and that has been examined with care, and with the result stated; and this opinion may be concluded without citing authorities to sustain the well-settled rule that to overcome the effect of a deed and turn it into a mortgage the evidence must be clear and convincing beyond reasonable controversy. Such evidence the plaintiff has failed to produce, and the defendants have made it very satisfactorily appear that such never existed. The defendants must have judgment dismissing the plaintiff's complaint on the merits, with costs.

Argued before DWIGHT, P. J., and LEWIS and MACOMBER, JJ.

Cook & Fitzgerald, for appellant.
Rogers, Locke & Milburn, for respondents.

No opinion. Judgment affirmed on opinion at special term.

---

(4 Misc. Rep. 19.)
WEST v. PLACE et al.

(Supreme Court, Special Term, Washington County. May, 1893.)

1. COSTS—WILL CONTEST—UNSUCCESSFUL PARTIES.
    On an unsuccessful contest of a will by testator's heirs, counsel fees should not be allowed them out of the estate.
2. SAME—BENEFICIARIES OF WILL.
    Where the executor of a will has employed counsel to uphold its validity on a contest instituted by the heirs, beneficiaries under the will, who also employed counsel to protect their interests, should not be allowed counsel fees out of the estate; and the fact that such beneficiaries are charitable institutions is no reason for departing from this rule.

Action by Wayland D. West, surviving executor, etc., of Isaac V. Place, against William Place and others, for the construction of the will of his testator. The will was declared valid, and the various parties now move for allowances for counsel fees out of the estate. Motion denied.

William Green, for plaintiff.
Anibal & Murray, Baker & Burton, and Spencer & Banker, for defendants.

RUSSELL, J. The motion is for extra allowances to defendants separately, and the action is for the construction of the last will and testament of Isaac V. Place, who died at Gloversville, wifeless and childless. Costs were given to the plaintiff and the various defendants, and an allowance of $1,000 to the plaintiff, as it appeared to the court that the plaintiff's attorney and counsel had fully cared for the interests of the beneficiaries of the estate in the presentation of the case. The main arguments in the case